UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Scott and Cindy Johnson, Individually & as Parents & Next Friends of minor A. J., <br><br> PLAINTIFFS <br><br> v. <br><br> L.B.O. Holding, Inc., d/b/a Attitash Bear Peak Resort & Attitash Resort; <br><br> Peak Resorts, Inc., d/b/a Attitash Bear Peak Resort & Attitash Resort; <br><br> Ross A. Stevens, d/b/a Stevens Engineering; <br><br> Bounce Back, LLC, d/b/a U.S. Airbag; and <br><br> U.S. Airbag, LLC, d/b/a U.S. Airbag; <br><br> DEFENDANTS | Civil Action No.: <br><br> **JURY TRIAL DEMANDED** |

## **COMPLAINT**

NOW COME the Plaintiffs, Scott Johnson and Cynthia Johnson, Individually and as Parents and Next Friends of minor A. J., by and through their attorneys, Hage Hodes, P.A., and hereby complain against Defendants L.B.O. Holding Co., Inc., d/b/a Attitash Bear Peak Resort & Attitash Resort; Peak Resorts, Inc., d/b/a Attitash Bear Peak Resort & Attitash Resort; Ross A. Stevens, d/b/a Stevens Engineering; Bounce Back, LLC, d/b/a US Airbag; and U.S. Airbag, LLC, d/b/a U.S. Airbag stating as follows.

1

**INTRODUCTION**

1.      Plaintiffs bring this civil tort action seeking money damages arising from Plaintiff's injurious July 3, 2014 accident (hereinafter the "Incident") while using the AIRBAG Jump amusement ride and attraction located on the premises of Attitash Mountain Resort in Bartlett, N.H. as a result of the actions and omissions of the Defendants.

**PARTIES**

2.      Plaintiffs Scott Johnson and Cynthia Johnson (hereinafter "the Johnsons") are the parents and next friends of their minor daughter, A. J.  At all relevant times, they have all resided at 9 Diana Hill Drive, Millbury, Massachusetts 01527.

3.       A. J. (hereinafter "A.J."), the minor child of Scott Johnson and Cynthia Johnson, was nine (9) years old at the time of the Incident. At all relevant times, she has resided at 9 Diana Hill Drive, Millbury, Massachusetts 01527.

4.      Defendant L.B.O. Holding, Inc., doing business as Attitash Resort and Attitash Mountain Resort (hereinafter "Attitash" or "LBO"), at all relevant times was a foreign corporation incorporated under the laws of the State of Maine, with a principal place of business at 17409 Hidden Valley Drive, Wildwood, Missouri 63025.  It is registered as a foreign corporation to do business with the New Hampshire Secretary of State, and its registered agent is Robert E. Murphy, Jr. Esq., 95 Market Street, Manchester, New Hampshire 03101.  It is the owner/leasee/licensee/permitee and/or operator of premises at 775 Route 302, Bartlett, New Hampshire.

5.      Defendant Peak Resorts, Inc., doing business as Attitash Bear Peak Resort & Attitash Resort, at all relevant times was a Missouri corporation that had a principal address of 17409 Hidden Valley Drive, Wildwood, Missouri.  Peak Resorts, Inc. owns and/or operates

Attitash and will be referred to hereinafter collectively with L.B.O. Holdings, Inc. as "Attitash" or "the Attitash Defendants." It is a publicly traded company listed on Nasdaq. It is not registered with the N.H. Secretary of State. At all relevant times, it owned and operated Attitash and owned and/or operated 13 other resorts. Its registered agent is Timothy D. Boyd, 17409 Hidden Valley Drive Eureka, Missouri.

6.     Defendant Ross A. Stevens is an individual who does business under the trade name Stevens Engineering and has registered such trade name with the State of New Hampshire (hereinafter "Defendant Stevens Engineering" or "Stevens Engineering"). His principal office is at 215 Sargent Rd., P.O. Box 1945, New London, New Hampshire. Defendant Stevens Engineering was involved in reviewing the design and construction of the AIRBAG Jump in or about at least February 2011, May, 2013, and July 2013 at the request of Attitash.

7.     Defendant Bounce Back, LLC (hereinafter "Bounce Back") at all times relevant herein was a Delaware limited liability company with a principal place of business at 341 Raven Circle, Wyoming, Delaware and/or 203 NE Front Street, Suite 101, Milford Delaware. Bounce Back, LLC did business as U.S. Airbag and was involved in the design, manufacture, sale, and marketing of the AIRBAG Jump and/or its component parts, including the airbag itself and tower. On information and belief Rufus Casey was the incorporator and sole member of Bounce Back whose last known address was 818 23rd Avenue, Seattle, Washington 98122.

8.     Defendant U.S. Airbag, LLC (hereinafter "U.S. Airbag") was a Minnesota limited liability company with a principal place of business at 2929 University Avenue, SE, Suite 120, Minneapolis, Minnesota. U.S. Airbag was involved in the design, manufacture, sale and marketing of the AIRBAG Jump and/or its component parts, including the airbag itself and tower. On

information and belief, Rufus Casey was the incorporator and sole member of U.S. Airbag, and his last known address was 818 23rd Avenue, Seattle, Washington 98122.

9. Defendants referred to in paragraphs 7 through 8 will collectively be referred to as "the US Airbag Defendants" except when otherwise individually named.

## JURISDICTION AND VENUE

10. There is complete diversity of citizenship between the parties as the Plaintiffs are citizens of the Commonwealth of Massachusetts and no Defendant is a citizen of Massachusetts.

11. The amount in controversy, exclusive of interest and costs, exceeds $75,000.00, as specified by 28 U.S.C. § 1332.

12. Venue is proper in New Hampshire pursuant to 28 U.S.C. § 1391(b)(2) as the accident at issue occurred in New Hampshire.

## STATEMENT OF FACTS

13. Prior to July 3, 2014, the Johnsons were induced by the marketing of Attitash and US Airbag to travel to New Hampshire for a vacation weekend and to stay at Attitash Resort and to participate in and purchase certain summer attractions and rides marketed by Attitash located on the premises of Attitash, including the AIRBAG Jump.

14. The AIRBAG Jump at Attitash included a 50' x 50' airbag and a scaffolding tower used as a jump tower.

15. Defendant Attitash' marketing materials for the AIRBAG Jump stated it was "designed to give you a soft landing" and stated the airbag was 60' x 60'.

16. Marketing materials also stated that it "will provide a soft landing for thrill seekers."

17. The side of the airbag was emblazoned with the US AIRBAG logo and the phrase "soft landings for superheroes."

18. The AIRBAG Jump involved paying patrons climbing the scaffolding tower and jumping off one of two platforms over 20 feet high onto the airbag below.

19. A.J. climbed the scaffolding, but was initially too scared to jump and headed back down the tower stairs without actually jumping off the tower platform, all as observed by Attitash employees acting in the scope of their employment as AIRBAG Jump attendants/operators.

20. At approximately 5:30 p.m., A.J. gave it another try. Attitash employee(s) did not warn her of the dangers of an aborted jump and did not discourage her from attempting another jump.

21. Just before she jumped completely off the platform, A.J. tried to abort her jump by grabbing hold of an exposed piece of scaffolding in an effort to not go through with the jump attempt. This time, however, she could not stop and her momentum, which caused her to fall from the platform while her family watched in horror.

22. A.J. fell from the platform, hitting the hard unpadded surfaces below and landing on her head.

23. A.J. suffered multiple injuries. She cracked her skull in multiple places, broke an eye socket, had cranial fluid leaking from her facial orifices, collapsed both lungs and fractured her tailbone as a result of this life threatening fall. She also briefly lost consciousness and suffered a seizure from those injuries while waiting for medical personnel to arrive. She has a permanent scar from the chest tube that was used to re-inflate her right lung. She also experienced loss of hearing from her right ear. Those are just some of the injuries A.J. suffered.

24.     A.J. experienced extreme conscious pain and suffering while being treated for her injuries.

25.     A.J. panicked when she struggled to breath.  She was transported to Memorial Hospital and then Maine Medical Center.  A.J. fought and screamed throughout these transports.

26.     Paramedics told A.J.'s mother, Cindy Johnson that "it didn't look good" when they left with A.J., implying that she may not survive.

27.     Defendants were aware or should have been aware that participants in the AIRBAG Jump may find themselves experiencing a sudden fear of heights while attempting a jump.

28.     One of Attitash's pre-Incident promotional videos depicts a young boy running across the scaffolding as if to jump, stopping (presumably scared), and then reattempting successfully.

29.     Prior to the incident at issue in this case, on or about August 17, 2013, another participant grabbed an exposed piece of scaffolding while jumping, and, because of this, injured herself when landing on the airbag incorrectly.

30.     The State of New Hampshire investigated this prior incident and advised Attitash to cover the corner posts with something that is not easily grabbed by participants and to consider giving participants something to hold in their hands to prevent exactly this type of accident.

31.     Attitash failed, however, to follow the State of New Hampshire's recommendations, which could have averted A.J.'s accident.

32.     On information and belief, Defendant Attitash had prior to the accident failed to position the airbag so that the AIRBAG Jump tower platform extended at least 5' over the airbag and unreasonably erected the airbag further away from the base of the scaffolding tower than what good practices required.

33. Defendants failed to install any padding on the hard surfaces below and surrounding the jump platform.

34. Defendant Attitash employees did not warn A.J. that she should not jump if she was scared or that there was any risk of her hitting the concrete if she did not sufficiently propel herself forward. Rather, A.J. was encouraged by Attitash personnel that she could handle the jump and to jump despite her fears.

35. After the accident, Defendants deflated the airbag before the State of New Hampshire or third parties could inspect the accident scene.

36. The AIRBAG Jump was improperly designed, constructed, operated, and/or maintained such that A.J. was able to fall from the platform onto the concrete and hard surfaces below.

37. The AIRBAG Jump ride or attraction was sold in a defective and hazardous condition to the Johnsons.

## COUNT I

### NEGLIGENCE

38. Plaintiffs repeat and incorporate by reference Paragraphs 1-37.

39. Defendants, on information and belief, designed, manufactured and constructed, supplied, and sold the AIRBAG Jump and its component parts, evaluated, and reviewed for compliance with safety standards and regulations, operated, maintained, marketed, promoted, and sold the AIRBAG Jump as an amusement ride and/or attraction.

40. Defendants had a duty to exercise a reasonable degree of care and the degree of care that, under the same or similar circumstances, would be exercised by an ordinary careful or prudent individual.

41. Defendants had a duty to exercise due care in the design, manufacture, and construction, supply, and sale of the AIRBAG Jump and its component parts, evaluation, and review for compliance with safety standards and regulations, operation, maintenance, marketing, promotion, and sale of the AIRBAG Jump as an amusement ride and/or attraction.

42. Defendants had a duty to exercise due care to provide appropriate warnings regarding the use and participation in the AIRBAG Jump.

43. Such care must be proportionate to the danger known or reasonably apprehended and commensurate with the circumstances and risks of the situation.

44. Defendants had a duty to operate its AIRBAG Jump in a safe, reasonable and prudent manner.

45. Defendant breached their duties by, *inter alia*, improperly setting up the AIRBAG Jump, improperly inflating the airbag, failing to follow the recommendations of the state to prevent injuries from aborted jumps, failing to properly instruct, advise, guide, supervise, and or train its employees on safe procedures relating to the AIRBAG Jump, failing to properly instruct, advise, guide, and train its patrons on the appropriate manner in which to jump, failing to warn patrons of the danger of attempting a jump while scared, failing to warn patrons of the risk of grabbing exposed scaffolding, failing to warn patrons of the risk of hitting the concrete, setting up the attraction such that there was a possibility of hitting the concrete and failing to properly train and supervise its employees.

46. Defendants are responsible for the actions of their employees, agents, and assigns for such actions under the doctrine of Respondeat Superior.

47.     As a direct and proximate result of the Defendants' breaches of their duties of care, A.J. suffered severe temporary and permanent physical, emotional and psychological harm, medical expenses, pain and suffering, loss of enjoyment of life and other losses.

48.     A.J. (through her parents and next friends Scott and Cindy Johnson) is entitled to recover all of her losses from Defendants, within the minimum and maximum jurisdictional limits of this Court, plus costs, interest, and attorney's fees as allowed by law.

49.     Scott and Cindy Johnson are likewise entitled to recover from Defendants the medical expenses and other losses they incurred as the result of A.J.'s injuries and damages.

## COUNT II

STRICT PRODUCT LIABILITY AND DEFECTIVE DESIGN/DEFECTIVE PRODUCT

50.     Plaintiffs repeat and incorporate by reference Paragraphs 1-49.

51.     Upon information and belief, Defendants designed, constructed, and sold the AIRBAG Jump in whole or its component parts.

52.     Defendants were in the business of selling the AIRBAG Jump or its component parts.

53.     The AIRBAG Jump was in a defective condition and unreasonably hazardous to the Johnsons, including A.J., as consumers of the AIRBAG Jump.

54.     The unreasonably dangerous condition existed when the Defendants sold the AIRBAG Jump ride and attraction to the Johnsons including A.J.

55.     The AIRBAG Jump reached the consumer without substantial change in the defective condition in which it was sold.

56.     The unreasonably hazardous condition caused or substantially caused A.J.'s injuries and the Johnsons (including A.J.'s) damages.

57. The purpose of and manner of A.J.'s use of the AIRBAG Jump was intended and/or was reasonably foreseeable by Defendant.

58. As a direct and proximate result, A.J. suffered severe temporary and permanent physical, emotional and psychological harm, medical expenses, pain and suffering, loss of enjoyment of life, and other losses.

59. A.J. (through her parents and next friends Scott and Cindy Johnson) is entitled to recover all of her losses from Defendants, within the minimum and maximum jurisdictional limits of this Court, plus costs interest and fees as allowed by law.

60. Scott and Cindy Johnson are likewise entitled to recover from Defendants medical expenses and other losses they incurred as the result of A.J.'s injuries and damages.

## COUNT III

VIOLATION OF NH RSA 358-A

61. Plaintiffs repeat and incorporate by reference Paragraphs 1-60.

62. Plaintiffs are consumers within the meaning of NH RSA 358-A.

63. All Defendants, except for Stevens Engineering, unfairly and deceptively advertised their products and services in violation of NH RSA 358-A:2 by stating *inter alia* that the airbag was designed to give a soft landing and by labeling the airbag "soft landings for superheroes."

64. Defendant Attitash unfairly and deceptively advertised their products and services in violation of NH RSA 358-A:2 by stating *inter alia* that the airbag was 60' by 60' when it was no more than 50' by 50'.

65. All Defendants, except for Stevens Engineering, misrepresented their goods and services by mischaracterizing the AIRBAG Jump's characteristics, uses, and benefits, in violation of NH RSA 358-A:2,V.

66. All Defendants, except for Stevens Engineering, violated NH RSA 358-A:2,VII by misrepresenting that its goods and services were of a particular standard and quality, when they were not.

67. All Defendants, except for Stevens Engineering, violated NH RSA 358-A:2, IX by falsely advertising its goods and services.

68. All Defendants' (except for Stevens Engineering) violations of NH RSA 358-A caused the Plaintiffs to suffer actual losses.

69. The Plaintiffs are entitled to recover all of their actual losses, and/or statutory penalties, double or treble damages, attorneys' fees, costs, and interest, all within the jurisdictional limits of this Court.

WHEREFORE, the Plaintiffs, Scott Johnson and Cynthia Johnson, Individually and as Parents and Next Friends of minor A. J., respectfully requests that this Court:

A. Enter judgment against the Defendants on all counts;

B. Award the Plaintiffs compensatory damages; enhanced compensatory damages; statutory damages; and other economic damages, in excess of $75,000.00, exclusive of costs and interest;

C. Award the Plaintiffs double or treble damages, costs, and attorneys' fees pursuant to RSA 358-A:10;

D. Award the Plaintiffs all interest and all costs incurred in connection with this matter; and

E.  Grant such other and further relief as this Court may deem just, equitable, and proper.

**PLAINTIFFS DEMAND A JURY TRIAL**

                Respectfully Submitted,

                SCOTT AND CINDY JOHNSON, INDIVIDUALLY AND AS PARENTS AND NEXT FRIENDS OF MINOR CHILD, A.J.

                By their attorneys,
                HAGE HODES, P.A.

Date: July 2, 2017      By:      /s/ Jamie N. Hage
                Jamie N. Hage (NHB #1054)
                Hage Hodes, Professional Association
                1855 Elm Street
                Manchester, NH 03104
                (603) 668-2222
                jhage@hagehodes.com

Date: July 2, 2017      By:      /s/ Douglas J. Miller
                Douglas J. Miller, Esquire (NHB #1756)
                Hage Hodes, Professional Association
                1855 Elm Street
                Manchester, NH 03104
                (603) 668-2222
                dmiller@hagehodes.com

Date: July 2, 2017      By:      /s/ Kathleen A. Davidson
                Kathleen A. Davidson, Esquire (NHB #19535)
                Hage Hodes, Professional Association
                1855 Elm Street
                Manchester, NH 03104
                (603) 668-2222
                kdavidson@hagehodes.com