UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Scott and Cindy Johnson, Individually & ) <br> as Parents & Next Friends of minor A.J. ) <br>     PLAINTIFFS, ) <br> ) <br> v. ) <br> ) <br> L.B.O. Holding, Inc., d/b/a Attitash Bear ) <br> Peak Resort & Attitash Resort, et. al. ) <br>     DEFENDANTS. ) <br> ) | Civil Action No. 1:17-cv-277-LM |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT, ROSS A. STEVENS D/B/A STEVENS ENGINEERING'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56(a), Local Rule 7.2(b), and the Court's Scheduling Order, defendant, Ross A. Stevens d/b/a Stevens Engineering ("Stevens") respectfully submits this Motion for Summary Judgement. As grounds for this Motion, Stevens submits that no genuine issues exist on facts material to the negligence and products liability claims of the Plaintiffs, Scott Johnson and Cindy Johnson, Individually and as Parents and Next Friends of minor A.J. (collectively "Plaintiffs").

**I.   INTRODUCTION**

        Plaintiffs have brought negligence and products liability claims against Stevens, a professional engineer, in connection with the limited professional services he provided L.B.O. holding Inc., d/b/a Attitash Bear Peak Resort & Attitash Resort ("Attitash") in connection with an Airbag Jump ride. Both claims must fail. New Hampshire law requires expert testimony to establish negligence against a professional like Stevens. The Plaintiffs' liability expert does not find that Stevens breached the standard of care. Indeed, the expert does not attribute any fault to Stevens in connection with the services he provided to

1

Attitash. A product liability claim can only be brought against a manufacturer of vendor of a product. It is undisputed that Stevens only provided professional services to Attitash. Since the Plaintiffs cannot satisfy the elements of either claim, Stevens is entitled to Summary Judgment.

## II. STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

### ROSS STEVENS D/B/A STEVENS ENIGNEERING

1. Stevens is a professional structural engineer licensed to practice in the State of New Hampshire. He is not an amusement ride design engineer or safety engineer. Affidavit of Ross Stevens at ¶ 1

2. Prior to 2013, L.B.O. Holding Inc. d/b/a Attitash Bear Peak Resort & Attitash Resort ("Attitash") had retained me to professional engineering services relating to civil and structural engineering projects. Affidavit of Ross Stevens at at ¶ 2

### CONSTRUCTION, DESIGN AND INSTALLATION OF AIRBAG JUMP

3. In April 2013, Attitash sought to open a summer amusement attraction comprised of a scaffolding tower and an inflatable airbag (collectively "Airbag Jump"). **Exhibit 1**: Email Correspondence between R. Casey and B. Jones (April 24, 2013).

4. The Airbag was designed and manufactured by U.S. Airbag, LLC d/b/a U.S. Airbag. Lynn Ladder drafted the drawings for the scaffolding structure. **Exhibit 2**: Plaintiffs' Complaint, Docket No. _ at ¶ 7 **Exhibit 3** Email from Jones to Lockwood and Stevens (May 8, 2013).

5. Attitash needed approval from the New Hampshire Department of Safety ("DOS") of the AirBag Jump ride before it could open the ride to the public. **Exhibit 4** DOS Carnival-Amusement Device Registration form (May 31, 2013).

6. In connection with its efforts to seek approval from the DOS, Attitash retained Stevens, a licensed structural engineer to design a wind restraint system for the ride sometime in April or early March 2013.  Affidavit of Ross Stevens   at ¶ 3

7. As part of the DOS approval process, the inspector asked Attitash to provide him with the manufacturers guidelines for summer use.  On May 8, 2013, Attitash received the information from US Airbag.  **Exhibit 5**: Email Correspondence between B. Jones and R. Casey (May 6 - 8, 2013).

8. On March 8, 2013, Attitash sent the materials, including two seasonal operations manual and design specifications for the scaffolding tower to Briggs Lockwood, Safety Inspector for the DOS, and Stevens. **Exhibit 3**:.

9. Stevens reviewed the design specifications and the operations manual solely to design the wind restraint system.  I designed the system and sent the design to Attitash.  Affidavit of Ross Stevens  at ¶ 5

10. On May 9, 2013, Attitash submitted an application for a commercial construction permit in connection with the construction and installation of the Airbag Jump. The Town of Bartlett approved Attitash's permit application following a hearing held on May 10, 2013. **Exhibit 6**: Town of Bartlett Commercial Construction Permit (May 9, 2013).  *Id*.

11. Attitash submitted a registration form with the DOS on May 31, 2018 to register the Airbag Jump. **Exhibit 7**: DOS Carnival-Amusement Device Registration form (May 31, 2013).

12. Following receipt of the registration form, the DOS approved the application and noted on the registration form that the Airbag Jump as "ok to operate in compliance with instructions from Stevens Engineering." **Exhibit 8**: DOS Amusement Ride/Device Review Form.

13. Attitash opened the Airbag Jump for the public in June 2013.  At the time Attitash opened the ride to the public, Stevens had only provided instructions regarding the installation of the system to stabilize the structure **Exhibit 9.** Email from Jones to Stevens (July 3 2013); Affidavit of Ross Stevens  at ¶ 5

14. On June 14, 2013, a rider was injured when a guest landed feet first on the AirBag Jump. **Exhibit 10** DOS Amusement Ride Accident Report (June 17, 2013).

15. The DOS investigator conducted an investigation and made a number of comments related to its inspection including recommending the installation of signage at each landing and incorporating pictograms and other materials in the instructional message before a jump. He also required that Attitash submit an engineer's verification of compliance with NH Administrative rules Saf-C 1400 by June 30. **Exhibit 11** DOS Inspection Record for the BigAir Bag Free Fall. .

16. Attitash contacted Stevens in late June 2013 to review its materials to ensure compliance with the NH Administrative rules Saf-C 1400. Affidavit of Ross Stevens   at ¶ 6.

17. To the best of Stevens knowledge, Attitash sought his services at the direction of State of New Hampshire Department of Safety after an incident where a patron landed feet first on the AirBag. Affidavit of Ross Stevens   at ¶ 7

18. On July 25, 2013, Attitash sent Stevens an updated drawing of the jump structure**.** **Exhibit 12** Email correspondence from B. Jones to R. Stevens dated June 25, 2013.

19. On July 3, 2013, Attitash sent to Stevens a copy of its operation manual and various US Airbag manuals and specifications. **Exhibit 9**:

20. Stevens only reviewed the materials Attitash sent him.  Attitash did not request that Stevens visit the ride or observe its operation.    Affidavit of Ross Stevens   at ¶ 9.

21. On July 10, 2013, Stevens sent his report to Attitash. **Exhibit 13**: Email Correspondence from Stevens to B. Jones (July 10, 2013).

22. The report notes that Chapter Saf-C 1400 references the ASTM standard but that the ASTM Standard has limited applicability for this type of ride. Stevens also indicated that he was attaching a list of recommendations and a copy of the applicable ASTM standards to provide Attitash with the information it needed to ensure that the ride more closely conforms to the intent of the governing rules and standards. Those recommendations were based upon any applicable ASTM standards and the USAB manual. **Exhibit 14** Letter from Stevens to Jones dated (February 4, 2011) (sic)**.**

23. Stevens recommendations included the installation of signage, training of patrons to address the potential lack of instructional information and improper patron body position during the jump. **Exhibit 14**.

24. Stevens also suggested the installation of a yet lower platform to prevent injury from improper body positon during the jump. **Exhibit 14**.

25. Stevens also noted that the owner was required to verify that the jump platform(s) overhang the edge of the air bag by a minimum of 5 ft**. Exhibit 14.**

26. Attitash did not seek Stevens approval regarding any modification it may have made as a result of Stevens' recommendations nor did Attitash ask Stevens to re-inspect the AirBag jump ride to ensure its compliance with the rules and standards.   Affidavit of Ross Stevens at ¶ 10 and ¶ 11.

27. Stevens had no further involvement in the Airbag Jump until after the July 3, 2014 accident that is the basis for this lawsuit. **Exhibit 3;**   Affidavit of Ross Stevens  at ¶ 12.

5

28. Stevens only provided professional services to Attitash. He did not manufacture the Airbag Jump. He did not manufacture the scaffolding tower. He has not been engaged in the sale or marketing of any Airbag Jumps or scaffolding towers. Affidavit of Ross Stevens at ¶ 14, ¶ 15 and ¶ 16

### PRIOR ACCIDENT

29. On or about August 17, 2013, an accident occurred at Attitash that involved a patron utilizing the Airbag Jump. Attitash described the accident as such: "[g]uest went to jump – got to the edge of platform but hesitated and grabbed rail; rotated and landed on head." **Exhibit 15**: DOS Amusement Ride Accident Report (August 17, 2013)..

30. The DOS also investigated that accident and issued a "review form" offering certain recommendations for Attitash's future operations of the Airbag Jump. DOS Lockwood recommended Attitash to: (1) "tape jumping lanes completely to ends of platforms"; (2) "possibly cover corner posts with something that is not easily grabbed by participants"; and (3) "consider giving participants something to hold in their hands – as discussed." **Exhibit 16**: DOS Amusement Ride/Device Review Form (August 19, 2013).

31. Stevens was not involved in the investigation of that accident nor did Attitash or the DOS seek his services in connection therewith. Affidavit of Ross Stevens at ¶ 12.

32. On May 20, 2014, the DOS again approved Attitash's operation of the Airbag Jump. **Exhibit 17**: DOS Amusement Ride/Device Review Form (May 20, 2014). Again, Stevens had no involvement with this process. Affidavit of Ross Stevens at ¶ 12.

### A.J.'S ACCIDENT AND SUBSEQUENT INSPECTIONS

33. The subject accident occurred on July 3, 2014. **Exhibit 2** at ¶ 1.

34. An accident investigation report submitted by Attitash notes that the minor plaintiff, the "guest", "began the jump process, hesitated under full momentum of process, attempted self-

6

arrest by grabbing a police which centrifuged her in opposite direction of airbag landing."
**Exhibit 18**: Attitash Accident Report to DOS (July 4, 2014).

## PLAINTIFFS' COMPLAINT

35. The Plaintiffs alleged that Stevens was involved in "reviewing the design and construction of the Airbag Jump" on or about February 2011, May 2013, and July 2013. **Exhibit 2** at ¶ 36. They assert two claims against Stevens for negligence and products liability. **Exhibit 2** at ¶¶ 38 – 60.

37. The Plaintiffs' negligence claim against Stevens is based upon an allegation that Stevens "had a duty to exercise a reasonable degree of care and the degree of care that under the same or similar circumstances, would be exercised by an ordinary careful or prudent individual." **Exhibit 2** at ¶ 40.

38. Without providing any specificity or distinction amongst the Defendants, the Plaintiffs allege that *all* of the Defendants had a duty to exercise "due care in the design, manufacture, and construction, supply, and sale of the Airbag Jump and its component parts, evaluation, and review for compliance with safety standard and regulations, operation, maintenance, marketing promotion, and sale of the Airbag Jump as an amusement ride and/or attraction. **Exhibit 2** at ¶ 41.

39. They further assert, again, without any specificity or distinction, the Defendants breached those duties by, *inter alia*, improperly inflating the airbag, failing to follow recommendations from the state to prevent injuries from aborted jumps, failing to properly instruct and supervise employees, failing to warn patrons on the danger of attempting a jump while scared, *etc.* **Exhibit 2** at ¶ 45.

7

40. In support of their products liability case, the Plaintiffs assert, once more without any specificity or distinction, that the Defendants "designed, constructed, and sold the [Airbag] Jump or its component parts and that each Defendant was "in the business of selling" the Airbag Jump. **Exhibit 2**. at ¶¶ 51 – 52.

41. The Plaintiffs disclosed their experts on or about August 31, 2018.

42. They subsequently produced an expert report of Mr. Corey Andres. **Exhibit 19**: Plaintiffs' Expert Disclosure; **Exhibit 20**: *Curriculm Vitae* of Corey Andres; and **Exhibit 21**: Expert Report of Corey Andres.

43. The expert disclosure deadline for the Plaintiffs expired on October 1, 2018.

44. Mr. Andres is not an engineer. **Exhibit 20**.

45. Moreover, in his expert report, Mr. Andres makes no finding or conclusion concerning Stevens. **Exhibit 21.**

### III. LEGAL STANDARD

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[A]n issue is 'genuine' if the evidence presented is such that a reasonable jury could resolve the issue in favor of the nonmoving party and a 'material' fact is one that might affect the outcome of the suit under governing law." *Fajardo Shopping Ct. v. Sun Alliance Ins. Co.*, 167 F.3d 1, 7 (1st Cir. 1999). Although infrequently sought in negligence cases, summary judgment is an appropriate means for determining whether a defendant owes a duty to a plaintiff. See *Brown v. United States*, 557 F.3d 1, 3 (1st Cir. 2009) ("[w]hether the defendant owes any duty in the first place, however, is a question of law and, therefore grist for the judgment mill.") Summary judgment is equally proper if the record established that the plaintiff does not have sufficient evidence to establish an essential

element of their case. See *Kelly v. Marcantonio*, 187 F.3d 192, 198 (1999) ("Summary judgment will be properly entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial")(citation omitted).

IV. ARGUMENT

    A. THE DUTY OF CARE OWED BY STEVENS IS LIMITED TO THE SCOPE OF SERVICES RENDERED IN CONNECTION WITH THE AIRBAG JUMP

It is axiomatic that a plaintiff cannot sustain an action for negligence unless the claim is based upon a legal duty. Whether a duty exists in a particular case is a question of law and in the absence the existence of a duty, a defendant cannot be held liable for negligence. *See Sintros v. Hamon*, 148 N.H. 478, 480, 810 A.2d 553 (2002); *Walls v. Oxford Management Co.*, 137 N.H. 653, 656, 633 A.2d 103 (1993). .[1] An actionable duty of care rests upon a judicial determination of whether the social importance of protecting the plaintiff's interest outweighs the importance of immunizing the defendant from expanded liability. *Sisson v. Jankowski*, 148 N.H. 503, 506, 509 (2002). Concerning negligence actions, the New Hampshire Supreme Court has expressly recognized the necessity of adopting well-defined guidelines to prevent the imposition of remote and unexpected liability on defendants. *Williams v. O'Brien*, 140 N.H. 595, 669 A.2d 18- 810 (1995). Moreover, in the case of a professional engineer, their duties are limited largely by the terms of their contract. *Spherex v. Alexander Grant & Co.*, 122 N.H. 898 (1982); *see also Banagham v. Dewey*, 340 Mass.

---

[1] New Hampshire law applies to the Plaintiffs' claims as this action was brought under this Court's diversity jurisdiction. *See Hernandez v. Philip Morris USA, Inc.*, 486 F.3d 1, 11 (1st Cir. 2007), citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938); *Beaudette v. Louisville Ladder, Inc.*, 462 F.3d 22, 27 (D. N.H. 2006) ("In a diversity action, whether expert testimony is required is a matter of state law." (citation omitted).

9

73, 80 (1959) (to determine liability "it is necessary to examine the scope of services contractually undertaken by the defendant").

Here, the duty of care owed by Stevens must be measured by the scope of services rendered in connection with the Airbag Jump. Attitash did not retain Stevens as the design engineer or safety engineer for the AirBag Jump. Indeed, Stevens did not design any part of the AirBag Jump other than the stabilizing structures. Stevens also performed a limited review of the Airbag Jump drawing and the manuals from Attitash and the manufacturers and made some recommendations that in his professional opinion would assist Attitash in complying with the applicable rules and standards. Attitash was not required to implement these recommendations and Stevens did not re-inspect the ride to determine whether Attitash implemented his suggestions. Attitash was free to accept, reject, or modify these recommendations. For example, Attitash did not follow Stevens recommendation that it install a lower platform.

The best evidence of Stevens' limited responsibility for the design of the ride is his lack of involvement after the August 17, 2013 accident and the subject incident in this lawsuit. On August 17., 2013 a patron attempted to unsuccessfully abort a jump by grabbing onto the scaffolding platform which caused the individual to fall on their head. The DOS investigated that incident and subsequently made several recommendations to Attitash to prevent similar accidents from occurring. Stevens had no involvement in the investigation of that matter nor was he involved in providing any recommendations to Attitash at that time.

Stevens did not owe a legal duty to perform services or recommendations outside of those sought by Attitash. Stevens was not required to continuously inspect the Airbag Jump. He was not required to formulate operational requirements for the Airbag Jump. He was not required to train, supervise, or even monitor the operation of the Airbag Jump. Simply put, Stevens was

required to review literature and design specifications for the Airbag Jump and attendant scaffolding platform and to recommend steps Attitash could take to conform to the applicable governing rules and standards. Attitash and/or US Airbag retained the ultimate authority for the design of the AirBag Jump, including the design elements that would protect patron safety. Accordingly, by virtue of the limited services rendered in connection with the Airbag Jump, Stevens did not owe the Plaintiffs, or any other patron of Attitash, a duty of care as to the safe operation of the amusement attraction.

To accept Plaintiffs' invitation to hold otherwise would result in an anomalous and improvident expansion of liability for design professional and engineers. It would also serve as a detriment to the public as design professionals and engineers would be exposed to ongoing liability in connection with any amusement attraction they reviewed or rendered services in connection with. As a matter of public policy, judicial guardedness against expanding the realm of liability is especially appropriate in a case such as this and the Plaintiffs' invitation to expand liability must be rejected.

### B. Plaintiffs' Cannot Establish that Stevens breached a duty or was the proximate cause of the injury.

Assuming arguendo that Plaintiffs can establish a duty, the Plaintiffs cannot establish that Stevens breached a duty and/or caused the Plaintiff's injuries. Although the complaint lacks specificity regarding the basis for Plaintiff's claim against Stevens, it appears to allege that Stevens was involved in reviewing the design and construction of the AirBag Jump ride and failed to ensure that the ride was in compliance with safety standards and regulations and/or safe for riders. Therefore, to determine whether Steven's breached his duty and caused the injury, the fact finder will need to consider, among other issues: the safety standards and regulations applicable to the design and operation of amusement rides and devices; the standard of care applicable to a

11

professional engineer reviewing the design and construction of an amusement ride; whether Stevens actions met this standard of care; and whether any alternative design was feasible and would have prevented the accident. In sum, whether Stevens committed negligence is so distinctly related to his position as a professional engineer that it is beyond the ken of the average layperson. *See Lemay v. Burnett*, 139 N.H. 633, 660 A.2d 1116, 1118 (1995). [2] Therefore, expert testimony is required to establish his negligence. *See Id;. In the Matter of Gronvaldt & Gronvaldt*, 150 N.H. 551, 554 (2004); *Laramie v. Stone*, 160 N.H. 419, 427 (2010) ("[e]xpert testimony is required when the subject presented is so distinctly related to some science, profession or occupation as to be beyond the ken of the average layperson");; *cf. Appeal of Boulard*, 165 N.H. 300 (2013) (expert testimony not required in administrative board hearing of a professional license as the board itself has expertise and specialized knowledge to evaluate whether a party's conduct was unprofessional"). *Penta Corp. v. Town of Newport* 2018 No. 212-2015-CV-00011 WL 1956355*6 (finding that expert testimony needed to determine whether Defendant negligently designed disc filters).

---

[2] See e.g., *Aetna Ins. Co. v. Hellmuth, Obata & Kassabaum, Inc.*, 392 F.2d 472, 477 (8th Cir. 1968) (providing that the standards of reasonable care, are the same for engineers as those applied to doctors, lawyers, architects, and "like professional men engaged in furnishing skill services for compensation"; *Peck v. Horrocks Engineers, Inc.*, 106 F.3d 949, 956 (10th Cir. 1997) (providing that "the liability of engineers is based upon professional negligence with respect to which only those qualified in the field can testify as to the standard of competence and care possessed by professional men … and whether there has been a breach of that standard of care"); *Conte v. Usalliance Federal Credit Union*, 2007 WL 3355281, at 4 (D. Conn. 2007) (expert testimony regarding the requisite standard of care is necessary in a malpractice claim against an engineer); *King County, Wash. V. 1KB Deutsche Industriebank AG*, 863 F.Supp.2d 288, 304 (S.D.N.Y. 2012) (placing engineers in the same category as attorneys, accountants and architect that are professional that might be liable for malpractice); *Columbus v. Smith and Mahoney*, 686 N.Y.S.2d 235, 236, 259 A.D.2d 857, 858 (1999) (dismissing engineering malpractice claim where expert did not establish deviation from applicable standard of care).

The issues faced by the Plaintiff in this case are similar to the issues faced by the Plaintiff in Lemay. In *Lemay*, the plaintiff was injured diving into a backyard swimming pool, and claimed that the homeowner should have provided warning as to the risk of diving into the pool. The trial court dismissed the warning case because the plaintiff failed to designate an expert on swimming pools and the New Hampshire Supreme Court affirmed. The court noted that while a juror may be general familiar with swimming pools that is simply not enough:

> [Plaintiff assumes that the average juror has either used the diving board of a backyard pool or observed its use. Even if this were true, we do not believe that the average juror could determine whether the particular combination of diving conditions found in [defendant's] pool – that is, water depth, diving board stiffness, diving board height, etc. – led to a reasonably safe diving conditions for a man of [plaintiffs] height and weight performing a certain style of dive.

*Id.* at 118.

Therefore, the Court found that the absence of expert testimony would have left the jury completely unguided as to a central issue. *Id*. Similarly, without expert testimony, the jury in this action would be completely unguided as to the central claim against Stevens i.e. whether Stevens breached the standard of care for a professional engineer.

In apparent recognition of the need for a liability expert, the Plaintiffs have identified and produced a report from Cory Andres that addresses the Defendants liability. Andres reports sets forth four liability findings: 1. Attitash failed to place the Airbag in a location that allowed a five foot overhang for the jumping platform; 2. Attitash failed to conduct pre-operation inspections to ensure that the Air Bag was in compliance with the manufacturer required five foot overhang for the jump platform; 3. The incident involving A.J. was foreseeable and preventable and Attitash failed to alter the jump tower walls, after the similar incident in August 2013; and 4. Attitash failed to create operating procedures as to where the tower attendants should stand that would reduce the risk of the patron coming into contact with the jump tower. The common thread amongst Andres'

"findings" is that he fails to note a single act or omission on the part of Stevens which breached any purported standard of care and/or caused the accident. Since the Plaintiffs cannot maintain a claim against Stevens without expert testimony and Plaintiffs expert has failed to attribute any liability to Stevens, Stevens is entitled to summary judgment as to a negligence claim based upon defective design.

Although it is unclear from the Complaint, the Plaintiffs may have also alleged a failure to warn claim against Stevens.. The bases for this claim is their contention that Attitash employees failed to warn A.J. of the dangers of an aborted jump; and did not discourage her from attempting another jump. Stevens review of drawings and manuals have absolutely no relation to how the ride operators may have communicated with A.J. while she prepared to jump. Moreover, Plaintiffs liability expert does not find that any of the Defendants alleged failure to warn caused the accident. Therefore Stevens is entitled to summary judgement on any failure to warn claim.

C. **SINCE STEVENS IS NOT A MANUFACTURER OR VENDER OF A PRODUCT, PLAINTIFF'S PRODUCT LIABILITY CLAIM AGAINST STEVENS MUST FAIL.**

Under New Hampshire law, "[o]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to [strict] liability for physical harm thereby caused if … the seller is engaged in the business of selling such a product." *Royer v. Catholic Medical Center*, 144 N.H. 330, 741 A.2d 74, 76 (1999) citing Restatement (Second) of Torts § 402A (1965). A simple reading of this well-established principle and its attendant prerequisites reveals the fallacy of the Plaintiffs' products liability claim against Stevens.

To be liable for a products liability claim under New Hampshire law, a defendant must be a manufacturer or a vendor of the product itself. *Siciliano v. Capitol City Shows, Inc.*, 124 N.H. 719, 475 A.2d 19, 25 (1984) ("New Hampshire's doctrine of products liability applies to persons engaged in the business of selling *products* for use or consumption.") (original emphasis), *citing*

*Buttrick v. Lessard*, 110 N.H. 36, 260 A.2d 111 (1969). Stevens did not manufacture the Airbag Jump, the scaffolding tower, or any of its component parts. Similarly, Stevens did not moonlight from his regular professional engineering occupation to sell or distribute the Airbag Jump to Attitash or any other entity for that matter. Stevens is not a manufacture that mass produces and distributes goods to a large body of distant consumers. *See Bruzga* 141 N.H. 756 at 405. .Instead, Stevens is a professional engineer who provided a service to Attitash. Therefore, the Plaintiff cannot pursue a claim of strict liability against Stevens under New Hampshire law. *See Id*.

If more were needed for summary judgment to enter as to this claim, which it is not, summary judgment is proper based upon the very allegations logged against Stevens in this case. Specifically, the Complaint alleges that Stevens was involved in "reviewing the design and construction of the Airbag Jump". Such allegations clearly note that Plaintiffs seek to hold Stevens liable based entirely upon the professional *services* rendered to Attitash.

## V.  CONCLUSION

For the foregoing reasons, Ross Stevens D/B/A Stevens Engineering respectfully request that the Court grant summary judgment as to the Plaintiff's Count I Negligence and Count II Products Liability as Plaintiff cannot meets its burden of proof for either count.

                          Respectfully submitted,

                          Ross A. Stevens d/b/a Stevens Engineering
                          By his attorneys,

                          /s/ *John T. Hugo*
                          Brian D. Gross, Esq.
                          NH Bar No. 16937
                          John T. Hugo, Esq. *PRO HAC VICE*
                          Joseph S. Bussiere, Esq. *PRO HAC VICE*
                          Manning Gross + Massenburg LLP
                          125 High Street, 6th Floor
                          Boston, MA 02110
                          bgross@mgmlaw.com
                          jhugo@mgmlaw.com
                          jbussiere@mgmlaw.com
                          Tel: (617) 670-8800
                          Fax: (617) 670-8801

Dated: October 25, 2018

## **LOCAL RULE 7.1 CERTIFICATION**

     I, John T. Hugo, hereby state, in accordance with LR 7.1(c) that the subject matter of this motion has been addressed with all parties to this action, save those in default, and have attempted in good faith to resolve or narrow the issue, but have been unable to do so.

                          /s/ *John T. Hugo*
                          John T. Hugo

## **CERTIFICATE OF SERVICE**

     I, Joseph S. Bussiere, counsel for the Defendant, Ross A. Stevens d/b/a Stevens Engineering, hereby certify that a true and accurate copy of the foregoing was filed electronically on the Court's CM/ECF system on October 25, 2018. Notice of this filing will be sent to all counsel of record via the Court's ECF system.

                          /s/ *Joseph S. Bussiere*
                          Joseph S. Bussiere